**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MAHABAD MOHAMMED ISMAEL,

                Plaintiff,

 v.

VIRAJ LEBAILLY, Acting Deputy
Chief of Mission, U.S. Embassy
in Turkey, *et al.*

                Defendants.

Civil Action No. 25-794 (EGS)

**MEMORANDUM OPINION**

Plaintiff Mahabad Mohammed Ismael ("Ms. Ismael") seeks relief under the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1); and the Mandamus Act, 8 U.S.C. § 1361, and requests that the Court compel Defendants Viraj Lebailly, Acting Deputy Chief of Mission, U.S. Embassy in Turkey; and Marco Rubio, Secretary of the U.S. Department of State (collectively, "Defendants") to process and adjudicate her visa application. Pending before the Court is Defendants' Motion to Dismiss ("Mot."). *See* Def.'s Mot., ECF No. 5.[1] Ms. Ismael opposes the Motion, *see* Opp'n, ECF No. 6; and Defendants have filed a Reply, *see* Reply, ECF No. 7. Upon careful consideration of the Motion, Opposition, and Reply thereto; the applicable law; and for the

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

reasons explained below, the Court **GRANTS** Defendants' Motion to Dismiss.

## I.   Background

### A.   Statutory and Regulatory

The Immigration and Nationality Act ("INA") allows a U.S. citizen or lawful permanent resident to apply for lawful permanent resident status for an immediate relative by filing a Petition for Alien Resident (I-130). *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.2(a)(1). Once approved by the U.S. Citizenship and Immigration Service ("USCIS"), the petition is sent to the State Department's National Visa Center ("NVC"), at which time the applicant must submit another application to the NVC and wait for an interview with a consular officer. 8 C.F.R. §§ 42.61–.62; 204.2(a)(3). At the end of the interview, "the consular officer must [either] issue [or] refuse the visa." *Id.* § 42.81(a). If the officer determines that they do not have sufficient information at the end of the interview to determine if the application should be granted or denied, pursuant to Section 221(g) of the INA, they may "refuse" the application pending further administrative processing. U.S. Dep't of State, *Administrative Processing Information*;[2] *see* 8 U.S.C. § 1201(g). "Administrative processing generally means that additional information is needed before a consular officer can determine

---

[2] Available at https://perma.cc/44NK-RVZE.

whether an applicant is qualified for the visa for which she has applied." *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

### B.    Factual

The following facts are drawn from the complaint, which the Court assumes are true for the purposes of deciding this motion and construes in Ms. Ismael's favor. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

In March 2007,[3] Ms. Ismael's brother, Bashdar Hamad, filed an I-130 visa petition with USCIS for her, and of which her three children are derivative beneficiaries. Compl., ECF No. 1 ¶¶ 1, 2, 16. USCIS approved the petition, but "[Ms. Ismael's] and her family's visa petitions remain pending since the petitions were filed in 2007." *Id*. ¶ 3. Ms. Ismael's children are age 10, 7, and 2. *Id*. ¶ 7. Mr. Hamad's "goal was to obtain lawful permanent resident status" for Ms. Ismael and her children so that they could join him in the United States. *Id.* ¶ 17.

---

[3] Paragraph two of the Complaint alleges that the visa petition was filed in March 2010. *See* Compl., ECF No. 1 ¶ 2. The subsequent allegations regarding the petition state that it was filed in 2007. *See id*. ¶¶ 3, 16. Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp'n") states that the petition was filed in March 2007. *See* Opp'n, ECF No. 6 at 13. The Court therefore assumes that Plaintiff's allegation that the petition was filed in March 2010 is a typographical error.

On August 23, 2023, Ms. Ismael and her children were interviewed at the U.S. Embassy in Turkey in connection with their visa application. *Id.* ¶ 18. Ms. Ismael and her children "responded truthfully to all questions and provided all requested information," but their visa application was refused and "placed in administrative processing" pursuant to INA § 221(g).[4] *Id.* ¶¶ 18, 19. That same day, Ms. Ismael was asked to "submit the supplemental questions for visa applicants form (DS-5535)," which she "promptly submitted in September 2023." *Id.* ¶ 19; Exhibit B to Compl.

On July 31, 2024, Ms. Ismael "received an email from the U.S. Embassy in Turkey confirming that the administrative processing of their applications was completed." Compl., ECF No. 1 ¶ 21. She was requested to "resubmit their DS-260 form and obtain new medical examinations for herself and her children." *Id.*; Exhibit C to Compl. On September 18, 2024, Ms. Ismael submitted the requested documents. Compl., ECF No. 1 ¶ 21.

On October 4, 2024, the U.S. Embassy in Turkey "advised [Ms. Ismael] that there were missing documents that they required to process the applications," and requested that Ms. Ismael submit the "Joint Sponsor information, Joint Sponsor Documents: I-864, Affidavit of Support, IRS transcript 2023 and a copy of joint sponsor's U.S. passport or green card, and a

---

[4] 8 U.S.C. § 1201(g).

[sic] IRS transcript for the most recent year." *Id.* ¶ 22; Exhibit D to Compl. That same month, Ms. Ismael submitted the requested documents. Compl., ECF No. 1 ¶ 22.

Ms. Ismael and her family have "inquired as to the status of these visa applications on numerous occasions and received no meaningful responses," despite her compliance with multiple follow-up requests for more information. *Id.* ¶ 23.

Ms. Ismael states that "Defendants' failure to adjudicate Plaintiff's I-130 based [sic] visa applications have put an indefinite hold [on] the reunification of Plaintiff and her brother, and caused significant personal, financial, and emotional hardship." *Id.* ¶ 6. Ms. Ismael has been separated from her brother, Mr. Hamad, since 2007. *Id.* ¶ 7. Her children are "experiencing ongoing challenges related to their safety and well-being"—Ms. Ismael and her husband have separated "due to her ties to the U.S. and her efforts to relocate," and she and her children "have been isolated within their community and religious circles" since the separation, "facing ongoing discrimination." *Id.* "Due to persistent bullying, [Ms. Ismael's children] have stopped attending school and now avoid social interactions out of fear of harassment." *Id.*

Ms. Ismael's mother, who resides in the U.S. with her son, has become "increasingly frail" and suffers from various ailments. *Id.* ¶ 8. Mr. Hamad has "been unable to maintain

employment due to the time required to assist her with daily activities." *Id.* Ms. Ismael had planned to help care for their mother, and she "hoped to reunite with her mother and allow [her mother] to spend time with her grandchildren, whom she has never met." *Id.*

Mr. Hamad had been "assisting with Plaintiff's living expenses in Iraq until they attended an interview in Turkey," but because he lost his job, he is "now reliant on his wife in the U.S. to sustain their household," and the support he gives his sister is "inconsistent and not enough to cover their needs." *Id.* ¶ 9. Ms. Ismael sold their home, car, and other belongings to fund their move to the United States, but "due to the delay in their case," they were "forced to return to Iraq with no home to go back to." *Id.* Ms. Ismael states that "the delay has prolonged their hardship, leaving [her] and her family without stability or a path forward." *Id.*

### C. Procedural

On March 18, 2025, Ms. Ismael filed her Complaint. Compl., ECF No. 1. Defendants filed their Motion to Dismiss on May 19, 2025. *See* Mot., ECF No. 5. Ms. Ismael filed her Opposition on June 2, 2025, *see* Opp'n, ECF No. 6; and Defendants filed their Reply on June 9, 2025, *see* Reply, ECF No. 7. On September 9, 2025, Ms. Ismael filed a Notice of Supplemental Authority. *See*

Notice, ECF No. 8. The motion is ripe and ready for the Court's adjudication.

## II.  Legal Standard[5]

### A.    Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

When evaluating a 12(b)(6) motion, the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of

---

[5] Defendants state that they move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot., ECF No 5 at 7. However, Defendants make no argument in support of dismissal pursuant to Rule 12(b)(1).

which [courts] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Furthermore, the court "must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotations omitted). The court must also give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Id.* at 677 (internal quotations omitted). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## III. Analysis

### A. Reasonableness of the Delay

"The central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take,'" *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64

(2004)) (emphasis omitted); "and, second, that the delay was unreasonable, *id*. (citing *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020). Ms. Ismael's claims under the APA and the Mandamus Act share this standard for obtaining relief. *See Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010).

### 1. Discrete Agency Action

Because, as explained below, the Court concludes that Ms. Ismael has failed to state a claim for unreasonable delay, the Court takes the approach of other Judges in this District and assumes, without deciding, that there is a clear, non-discretionary duty for Defendants to adjudicate the applications. *See Baygan v. Blinken*, Civil Action No. 23-2840, 2024 WL 3723714, at *6 (D.D.C. Aug. 8, 2024) (citing *Rostamnia v. Blinken*, Civ. A. No. 23-1638 (RDM), 2024 WL 1328462, at *5 (D.D.C. Mar. 28, 2024)).

The Court therefore need not address Defendants' argument that there is no discrete agency action that a consular official is required to take. Mot., ECF No. 5 at 11-15. In making this argument, Defendants rely heavily on *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), an unpublished opinion where the court held that under Section 555(b) of the APA, once the plaintiff's visa is "refused," a final decision about the visa has been made, and officers do not have a clear,

legal duty to act further on these applications. *Karimova*, 2024 WL 3517852, at \*2-6.[6] This holding has called into question a long line of cases where "[j]udges on this court have consistently held that the doctrine of consular nonreviewability does not apply to review of visa applications that have been refused under Section 221(g), finding that such refusal is not a final agency action." *Shoaie v. Blinken*, No. 1:24-cv-01513 (GMH), 2024 WL 4697732, at \*4 (D.D.C. Nov. 6, 2024) (collecting cases). However, because it is an unpublished opinion, the extent to which it is precedential is not clear. In any event, because the Court assumes a non-discretionary duty, it need not address the applicability of *Karimova* here.

### 2. The Delay Is Not Unreasonable

The reasonableness of the delay is analyzed using the "*TRAC*" factors:

> (1) The time agencies take to make decisions must be governed by a rule of reason;

---

[6] Two rules of the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") address the precedential weight of unpublished opinions. D.C. Cir. R. 32.1(b)(1)(B) states that "[a]ll unpublished orders or judgments of this court, including explanatory memoranda . . . entered on or after January 1, 2002, may be cited as precedent." D.C. Cir. R. 36(e)(2) states that "[w]hile unpublished dispositions may be cited to the court in accordance with . . . Circuit Rule 32.1(b)(1), a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition."

(2) Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) The court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) The court need not find any impropriety lurking behind agency lassitude in order to hold that agency is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984). The first and fourth factors are the most important ones when a court considers a challenge in the visa context. *Da Costa,* 80 F.4th at 340. For the reasons explained below, the Court concludes that Ms. Ismael has failed to state a claim for unreasonable delay. As a preliminary matter, Ms. Ismael argues that at the motion to dismiss stage, it is premature to engage in an analysis of the *TRAC* factors. Opp'n, ECF No. 6 at 11. Defendants respond that "Plaintiff has failed to state a claim for unreasonable delay because any delay here is not unreasonable as a matter of law," Mot., ECF No. 5 at 18; and that "it is typical for judges in this District to evaluate

11

at the threshold whether a complaint has pled sufficient facts to make a claim of unreasonable delay plausible" through a full analysis of the TRAC factors, Reply, ECF No. 7 at 19.

"It is the majority view in this district that 'application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay.'" *Hajizadeh v. Blinken*, Civil Action No. 23-1766, 2024 WL 3638336, at *4 n.4 (D.D.C. Aug. 2, 2024) (citing *Bega v. Jaddou*, No. 22-CV-2171, 2022 WL 17403123, at *4 n.2 (D.D.C. Dec. 2, 2022)). The Court concludes that, for the reasons explained below, the complaint and materials here contain sufficient materials to evaluate the *TRAC* factors.

### a. *TRAC* Factors One and Two

Ms. Ismael argues that the "visa application has remained unresolved for over fifteen years since the initial filing." Opp'n, ECF No. 6 at 31.[7] The Complaint alleges that the visa petition was filed with USCIS in March 2007, *see* Compl., ECF No. 1 ¶ 16; and that it was approved by USCIS although the date of approval is not alleged, *id*. ¶ 3. The Complaint further alleges that the U.S. Embassy in Turkey interviewed Plaintiff and her children on August 29, 2023, *see id*. ¶ 18; that she provided the

---

[7] The Court observes that if the initial filing was March 2007, this occurred nineteen years ago, not fifteen.

responses to supplemental questions in September 2023, *see id*. ¶ 19; and that she responded to additional requests from the embassy on September 18, 2004, *see id*. ¶ 21; and in October 2024, *see id*. ¶ 22.

"Courts generally measure the delay from the date of the last governmental action." *Al Saedi v. LeBailly*, Civil Action No. 24-1401, 2025 WL 485410, at *5 (D.D.C. Feb. 13, 2025). Here, that is October 2024, when the Embassy last contacted Ms. Ismael to request missing documentation. Ms. Ismael argues that the delay should be measured from 2007 based on the allegation that "Plaintiff's and her family's visa applications remain pending since the petitions were filed in 2007." Compl, ECF No. 1 ¶ 3; *see also* Opp'n, ECF No. 6 at 30. The Complaint alleges that Ms. Ismael's children are age 10, 7, and 2, *id*. ¶ 7; and so in 2007, they had not yet been born. Ms. Ismael alleges no facts regarding the status of the application from 2007 until the August 2023 interview, nor has she provided any legal argument regarding how her children's visa applications relate to her 2007 petition filed before they were born. For all these reasons, the Court will measure the delay from October 2024. Accordingly, the delay was approximately five months when Ms. Ismael filed her Complaint in March 2025, and will have been approximately nineteen months in May 2026.

13

"[T]he first and second factors ask whether a rule of reason governs the agency response time and whether Congress, by statute[8], indicated an expected timetable for the response time." *Baygan*, 2024 WL 3723714, at *6. "Absent a congressionally supplied yardstick [as is the case here], courts typically turn to case law as a guide" to determine whether a delay is reasonable. *Sarlak v. Pompeo*, Civ. A. No. 20-0035 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "In assessing whether an agency follows a rule of reason, we evaluate the length of the delay in light of 'the complexity of the task at hand, the significance and permanence of the outcome, and the resources available to the agency.'" *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

This factor favors Defendants because "processing visas takes a baseline amount of time," *Khazaei v. Blinken*, Civil Action No. 23-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023); and because of the permanence of the outcome. The Complaint alleges that Ms. Ismael's brother seeks "lawful permanent resident status for his sister" and her children.

---

[8] Ms. Ismael points to 8 U.S.C. 1571(b) and the suggested benchmark of 180 days for processing immigration benefit applications, but she acknowledges that this provision does not constitute a congressionally imposed deadline. Opp'n, ECF No. 6 at 30-31. Accordingly, there is no statutory timetable and so this factor is inapplicable.

Compl., ECF No. 1 ¶ 17. "District courts have generally found that immigration delays in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable." *Id*. (citation omitted). Moreover, "[c]ourts in this District consistently have held that two or three years does not constitute an unreasonable delay." *Tekle v. Blinken*, Civ. A. No. 21-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases). The alleged delay in this case—five months at the time of filing and nineteen months as of May 2026—is therefore not unreasonable.

### b. *TRAC* Factors Three and Five

The third and fifth factors weigh in favor of Ms. Ismael. Ms. Ismael alleges personal, financial, and emotional hardship as a result of the delay in processing her visa application. Compl., ECF No. 1 ¶ 6. Ms. Ismael points to her separation from her brother and mother and her children's separation from their uncle and grandmother. *Id*. ¶¶ 7, 8. The persistent bullying of her children due to their connection to the U.S. has led them to stop attending school and avoid social interactions. *Id*. Furthermore, Ms. Ismael's mother—who lives in the U.S. and is cared for by her brother—suffers from mental and physical health conditions necessitating a caregiver. *Id*. ¶ 8. Ms. Ismael's brother's need to provide her care resulted in him losing his job, which resulted in financial hardship to Ms. Ismael because

his ability to send money to them is inconsistent and not enough to cover their living expenses. *Id*. ¶ 9.

Defendants contend that this factor weighs in favor of them because "[p]rioritizing Plaintiff's case will simply benefit Plaintiff to the detriment of other noncitizens, who may have experienced the same or worse impacts from a delay." Mot., ECF. No. 5 at 23-24. "However, courts evaluate the third and fifth factors in relation to the individualized harm suffered by the plaintiff in question." *Baygan*, 2024 WL 3723714, at *8.

### c. *TRAC* Factor Four

The fourth factor weighs in favor of Defendants. "When analyzing this factor, we 'consider the effect of expediting delayed action on agency activities of a higher or competing priority.'" *Da Costa*, 80 F.4th at 343 (quoting *TRAC*, 750 F.2d at 80). "As many courts have recognized, ordering an agency to expedite the review of a particular visa application results in line-jumping and ultimately delays the final adjudication of the applications that were skipped." *Meyou v. U.S. Dep't of State*, Civil Action No. 21-2806, 2022 WL 1556344, at *4 (D.D.C. May 17, 2022). "This factor often carries significant weight." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021).

Ms. Ismael's Complaint contains no allegations about whether there is a visa processing backlog. Nor have Defendants provided any information about visa processing backlogs.

16

However, granting relief to Ms. Ismael "would necessarily come at the expense of other similarly situated applicants." *Da Costa*, 80 F.4th at 344. Indeed, Ms. Ismael acknowledges that "[g]enerally, Courts, including within this District, have 'refused to grant relief "where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain.'" Opp'n, ECF No. 6 at 31 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (alterations in original) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991))). Ms. Ismael claims

> that it is not her intention to request this Court nor the Defendants to place her case before other similarly situated applicants facing similar unreasonable delays in the adjudication of their visa applications . . . [rather] she merely requests that her application, which has been placed in administrative processing status for an indeterminate period of time, be reviewed and a final decision rendered as soon as practicable.

Opp'n, ECF No. 6 at 31. But that is exactly what she requests. In her Complaint, she requests that the Court enter an order mandating that Defendants process the applications within 15 days or as soon as reasonably practicable. Compl., ECF No. 1 at 8-9. In the Proposed Order provided with her Opposition brief, she asks the Court to compel Defendants to issue a final decision within 30 days of the Court's decision. *See* Proposed

17

Order, ECF No. 6-2.  Were the Court to grant her the relief she seeks, her case would necessarily be moved in front of others. Finally, Ms. Ismael's Complaint contains no allegations supporting her argument that she does not intend to request that her case be put ahead of others in the queue. *Contrast Ahmed v. Blinken*, 759. F. Supp. 3d 1, 7 (D.D.C. 2024) (noting that plaintiff sufficiently alleged that she would not be put at the head of the queue, resulting in all others being one step back, if the Court were to order Defendants to make a decision on her application).

### d. *TRAC* Factor Six

Ms. Ismael does not allege that the delay is the result of any impropriety, nor does she request discovery on the issue. *See generally* Compl., ECF No. 1. "As *TRAC* directs ... the lack of plausible allegations of impropriety does not weigh against [Plaintiff]." *Fakhimi v. Dep't of State*, No. 23-CV-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023). Accordingly, the sixth factor is neutral.

In sum, two of the factors weigh in favor of Ms. Ismael, two weigh in favor of Defendants, one is inapplicable, and one is neutral. Since the two most important factors—whether the delay is reasonable and the effect of expediting delayed action on agency activities of a higher or competing priority—weigh in Defendants' favor, the Court concludes that Ms. Ismael has

18

failed to state a claim of unreasonable delay. She has therefore failed to state a claim upon which relief can be granted.

### B. Consular Non-Reviewability

Defendants also argue that Ms. Ismael's claims fail under the Consular Non-Reviewability doctrine. Mot., ECF No. 5 at 15-18. Under this doctrine, a consular official's decision to issue or withhold a visa is shielded from judicial review, unless Congress says otherwise. *Baan Reo Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). Importantly, the doctrine is not jurisdictional. *Dep't of State v. Muñoz*, 602 U.S. 899, 907 n.4 (2024). Defendants argue that *Karimova* forecloses Ms. Ismael's claim. Mot., ECF No. 5 at 17. Because the doctrine is not jurisdictional, however, courts may "assume without deciding" that a plaintiff's "claims are reviewable[ ] notwithstanding consular nonreviewability." *Trump v. Hawaii*, 585 U.S. 667, 683 (2018). Accordingly, "[t]he Court need not determine the extent to which Karimova requires it to apply the consular nonreviewability doctrine here." *Al-Kawaz v. U.S. Dep't of State*, Civil Action No.: 24-1792 (RC), 2025 WL 1768103, at *4 (D.D.C. June 26, 2025).

19

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants'

Motion to Dismiss, ECF No. 5; **and DISMISSES the case without**

**prejudice.** An appropriate Order accompanies this Memorandum

Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **May 7, 2026**